IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 11, 2012

ALONZO EUGENE TERRELL v. STATE OF TENNESSEE

Direct Appeal from the Criminal Court for Davidson County
No. 2009-A-286      Steve Dozier, Judge

No. M2012-00552-CCA-R3-PC - Filed January 16, 2013

Petitioner, Alonzo Eugene Terrell, was indicted by the Davidson County Grand Jury for attempted first degree murder and especially aggravated robbery. Pursuant to a negotiated guilty plea, he pled guilty to aggravated robbery and received a Range II sentence of 12 years, and the count charging attempted first degree murder was dismissed. He subsequently filed a timely petition for post-conviction relief, and an evidentiary hearing was held. Petitioner appeals from the post-conviction court's ruling denying relief. After a complete review we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

William E. Griffith, Nashville, Tennessee, for the appellant, Alonzo Eugene Terrell.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Guilty Plea*

Near the beginning of the guilty plea submission hearing, the following exchange occurred between the trial court and Petitioner:

THE COURT:          All right. [Petitioner], you're here charged with attempted first-degree murder. Is he one that would qualify as a repeat violent offender?

[PROSECUTOR]:       Yes, sir.

THE COURT:          That charge could carry a sentence of 15 years up to life without parole. You are also charged with especially aggravated robbery which could carry that same punishment. Do you understand the charges against you?

[PETITIONER]:       Yes, sir.

THE COURT:          Have you been able to discuss and go over these charges with [trial counsel]?

[PETITIONER]:       Yes, sir.

THE COURT:          And you are satisfied with his representation?

[PETITIONER]:       Yes, sir.

The factual basis for entry of the "best interest" guilty plea by Petitioner was stated by the prosecutor. That statement and Petitioner's responses are as follows:

[PROSECUTOR]:       Thank you, Your Honor. If this case had gone to trial, the State would call witnesses who would be available to testify that on or about September 16, 2008 at approximately 3:32 in the afternoon, the police were dispatched to a shooting at Cockrall Street and D.B. Todd Boulevard. An investigation revealed that the [Petitioner] arrived at the scene of the shooting in an automobile driven by Rasual Rashaun Majjied (phonetic).

Mr. Majjied [Petitioner's co-defendant] exited the vehicle, [and] confronted the victim in this case, [ ]. Discussion ensued between [the victim] and Mr. Majjied. There was an argument between Mr. Majjied

and [the victim] originally but [the victim] and Mr. Majjied resolved their argument.

Once their discussion was finished, [Petitioner] came around the vehicle and opened fire on [the victim] shooting [the victim] twice, firing five times at [the victim]. [The victim] was severely injured in his lower extremities as a result of the shooting. [Petitioner] took flight from the scene of the shooting once police arrived on the scene. Police attempted to chase [Petitioner] several blocks, but could not apprehend [Petitioner] on that date.

[The victim] was transported to Vanderbilt for treatment for his injuries. [Petitioner] was apprehended approximately one year later when a warrant was finally served on him.

The State would show proof from [the victim] that approximately $1,000 in cash was taken from [the victim] by [Petitioner] after the shooting. The State would also submit -- the State anticipates there would be testimony from another witness that a quantity of drugs, to wit: Cocaine was taken from [the victim] by [Petitioner] after the shooting.

All of those events did take place in Davidson County. Based on all of those facts, the State recommends the previously announced disposition.

And Your Honor, with regard to the best-interest aspect, it is the State's understanding that [Petitioner] is not contesting the fact that he shot [the victim], he is contesting the fact that he took something from [the victim] afterwards.

THE COURT:     Is that accurate, [trial counsel]?

[TRIAL COUNSEL]:  Yes, Your Honor.

THE COURT:        All right. [Petitioner], based on that set of facts, what
                  is your plea, what you view as your best interest to the
                  charge of aggravated robbery, guilty or not guilty?

[PETITIONER]:     Guilty.

*Post-Conviction Hearing*

Petitioner testified at the post-conviction hearing that he did not shoot the victim or take any property from the victim. As to the fact that witnesses had given statements indicating otherwise, Petitioner testified, "They all got some - - they all lying. They all telling different stories. They all got something different to say. There ain't nobody['s] story consistent. They all got a reason to lie." Petitioner was asked why he had pled guilty if he was not guilty, and he explained it was "[b]ecause they was threatening me with a life sentence without parole."

The post-conviction proof showed that prior to the guilty plea, the State filed notice that Petitioner's prior criminal record qualified him as a repeat violent offender under the "three strikes" statute, Tennessee Code Annotated section 40-35-120. This meant he could be sentenced to life without possibility of parole if convicted as charged with attempted first degree murder or especially aggravated robbery. Petitioner testified that he was "prepared to go to trial" when the state filed its "three strikes" notice two days before the scheduled trial date and all that trial counsel did was "get a continuance." Petitioner acknowledged at the post-conviction hearing that he fully understood he could be sentenced to life without parole if convicted as charged. However, Petitioner claimed that he knew nothing about the possibility of being convicted of a lesser included offense if he had gone to trial.

Petitioner reiterated that he wanted to go to trial, but he did not do so because trial counsel "kept pressuring me that I need to take this, I needed to take the plea." Petitioner acknowledged it was his choice to plead guilty rather than go to trial but trial counsel "was my advisor."

Petitioner testified that he tried to discuss with trial counsel the inconsistent statements given by witnesses and that he tried to "fire" trial counsel, but the trial court would not allow that to occur. Petitioner maintained that he did not take any property from the victim and that he was unhappy because he pled guilty to aggravated robbery, an offense he did not commit. Also, Petitioner testified that he did not shoot the victim and was only "standing there" when the victim was shot. When specifically asked by his post-conviction counsel to state his complaints about trial counsel's representation, Petitioner stated,

Well, I wanted him to investigate and - - and get all of these conflictive statements and represent them to the [district attorney general] and the Judge to show that I didn't do what I done. [sic] It's all in the paperwork.

Petitioner could not make bond pending the trial, so he remained in jail after his arrest. He testified that although trial counsel did meet with him in jail, they never discussed the case because trial counsel "mostly came just to get me to plea."

On cross-examination, Petitioner admitted that he was aware, before the guilty plea, that he was charged with two Class A felonies. He also acknowledged that at that time he knew that if convicted as charged, he was facing a sentence of life without parole.

Trial counsel testified that he had been licensed to practice law since 2003. He had spent three years as an assistant public defender, approximately two years employed by the Tennessee Department of Human Services, and the balance of the time in private practice with the majority of his work being in criminal law. He had tried jury trials in criminal cases as well as non-jury trials and hearings in both general sessions and criminal/circuit courts.

Trial counsel had a strained relationship with Petitioner until after trial counsel filed a motion to reduce bond. Trial counsel requested and received discovery from the State and visited Petitioner at the jail to discuss the case approximately twenty to thirty times. They went over the discovery information provided by the State, discussed what their investigator had found, and overall they discussed the case in great detail. He also met with Petitioner and discussed the case with him when Petitioner had a court hearing. Trial counsel stated that Petitioner was very engaged in the discussions regarding his case. Trial counsel was able to speak only briefly with the victim, who did not want to talk to trial counsel. However, in this discussion the victim confirmed that his testimony at trial would be that Petitioner had shot him.

Trial counsel denied that he threatened Petitioner in order to get him to plead guilty. Trial counsel did discuss with Petitioner the possible sentences he could receive for the charged offenses and the lesser included offenses if he went to trial and was convicted.

On cross-examination trial counsel testified that the inconsistencies in various statements or pre-trial testimony of witnesses concerned whether cocaine and/or money, or nothing at all, was taken from the victim during the criminal incident. Petitioner was aware of all these inconsistencies, as well as the fact that money from the victim was released to the victim's family at the hospital.

Trial counsel explained that two things occurred which led Petitioner to abandon his resolve to go to trial and accept a negotiated plea agreement. First, Petitioner did not believe that either his co-defendant or the victim would appear in court to testify that he shot the victim, but they did appear at the first trial date and did confirm that Petitioner shot the victim. Second, the State's notice to seek a sentence of life without parole was filed only a few days before the first trial setting. Trial counsel stated that he "absolutely" believed that Petitioner entered "a knowing guilty plea."

Petitioner also presented the testimony of Yolanda Kimbrough and Metro Police Department Officer Angela Booker at the post-conviction hearing. Officer Booker testified that she was on patrol near the incident when a woman "flagged" her down and stated that someone had been shot on Cockrell Street. She drove to the location and saw the victim lying on the ground. As she walked toward the victim, another woman pointed at Petitioner and stated that Petitioner had shot the victim.

*Analysis*

The post-conviction court took the matter under advisement and subsequently entered an order dismissing the petition. In this order, the post-conviction court explicitly accredited the testimony of trial counsel, rather than Petitioner, on all factual allegations made by Petitioner. Furthermore, the post-conviction court made the explicit conclusion that Petitioner failed to prove any of his factual allegations by clear and convincing evidence.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland*

standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id*. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

The United States Supreme Court has held that a plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship*, 858 S.W.2d at 904. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In this appeal, Petitioner argues that trial counsel rendered ineffective assistance of counsel by failing to investigate the case and failing to prepare a defense. Petitioner cites to his own testimony at the post-conviction hearing that trial counsel only discussed "plea offers" and did not discuss the State's evidence against him. This testimony was refuted by trial counsel's testimony. As noted above, the post-conviction court accredited the testimony of trial counsel, not Petitioner. Petitioner further argues on appeal that his guilty plea was not knowingly and voluntarily entered. Again, in support of this ground for relief on appeal, Petitioner relies on his own testimony, not accredited by the post-conviction court, that he did not shoot the victim or take any property from the victim, but only pled guilty because he "felt pressured and threatened by his trial counsel."

The post-conviction court did not err by denying relief to Petitioner. Accordingly, Petitioner is not entitled to relief in this appeal.

**CONCLUSION**

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE